## Joshua R. Serfass, Appellant, *v.* Abraham L. Serfass and Orrin Serfass.

*Wills—Rule in Shelley's case—Fee simple estate.*

Testator directed as follows: " I give, devise and bequeath unto my daughter all that certain lot (describing it) to be held, used, occupied and enjoyed by her during the term of her natural life, and at her decease I do order and direct that the same shall pass and descend to her heirs, or next of kin, in like manner as though she had been seized thereof in her lifetime in fee simple sole and unmarried, and had died intestate." *Held,* that the daughter took an estate in fee simple.

Argued March 6, 1899. Appeal, No. 176, Jan. T., 1898, by plaintiff, from decree of C. P. Northampton Co., May T., 1898, No. 2, dismissing bill in equity. Before GREEN, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for partition.

Maria M. Serfass died on January 22, 1896, leaving a will which practically cut off her son, Joshua R., the plaintiff, from an interest in her estate. The defendants are brothers of the plaintiff.

Plaintiff contended that under his grandfather's will his mother took a life estate merely in the lands of which partition is craved, while defendants contended that by the operation of the rule in Shelley's case, she took a fee simple.

SCHUYLER, P. J., filed the following opinion:

The question is whether Maria M. Serfass took an estate in fee simple, or only a life estate, under the following clause in her father's will: " I give, devise and bequeath unto my daughter, Maria, all that certain lot," describing it, " to be held, used, occupied and enjoyed by her during the term of her natural life. And at her decease, I do order and direct that the same shall pass and descend to her heirs or next of kin, in the same manner as though she had been seized thereof in her lifetime in fee simple sole and unmarried, and had died intestate." It is not disputed that if this clause had ended with the word "heirs," Maria would have taken a fee simple, but the plaintiff contends that the superadded words show an intent to give her but a life estate. If that be so, then the intent must prevail, for while it is true that a testator, after having given a fee simple, cannot denude it of its nature and properties, yet " he may restrain the generality of a devise by subsequent expressions and convert that which otherwise would have been a fee simple into an inferior interest: " Haldeman v. Haldeman, 40 Pa. 34. But "the strong presumption arising from the use of technical words of limitation is of an intention that the remaindermen shall take by descent, a presumption not easily overcome. It may be rebutted, but it can be by nothing short of affirmative evidence of a contrary intent, so clear as to leave no reasonable doubt: " Physick's Appeal, 50 Pa. 136 ; Doebler's Appeal, 64 Pa. 17. Do, then, the superadded words above mentioned supply this quality of evidence ? We think not. Surely, the words "next of kin" do not, for these words, in the majority of cases, mean the same as the words "heirs at law : " 16 Am. & Eng. Ency. of Law, 703. Nor do the words " had died intestate : " Kuntzleman's Est., 136 Pa. 142. Nor yet do the words " sole and unmarried." The utmost possible effect of these words is to create a separate use for Maria's benefit during coverture, but a " trust for coverture is not inconsistent with the ownership of the fee: " Shalters v. Ladd, 141 Pa. 349. We conclude, therefore, for there

is nothing else in the will to rebut the presumption arising from the use of the word " heirs," that the estate limited to Maria is a fee simple. That being so, the plaintiff has no standing in court, and his bill must be dismissed.

It is not to our credit that less than a year ago, when this same question came up on demurrer, we reached a conclusion directly the reverse of the one just announced. This may have been due to the wide range of the argument, thus diverting attention from the pivotal point in the case, or it may have been that owing to the fact that the decision was not final and to a press of other business, the case did not receive the full consideration which we have since given it. Whatever the cause, we are now convinced that our former decision was a mistake. The mistake consisted in assuming that the present case was ended by Shalters v. Ladd, supra. True, these cases have their important features in common. In both of them the limitation is to a wife and her heirs ; in both of them the wife takes a separate use ; and in both of them the wife survived her husband. But Shalters v. Ladd did not turn on either of these points. The controlling feature in that case was that the will not only deprived the husband of his marital rights during coverture, but it expressly excluded him from his rights as tenant by the curtesy, thus narrowing the line of descent. It was upon that ground, which is entirely wanting in the case at bar, and upon that ground alone, that the wife's interest was cut down to a life estate. Had that element been absent, the opinion of the Supreme Court clearly indicates that the wife would have taken a fee simple.

As there was no request for findings of facts, availing ourself of section 79 of the court rules, we have found none. We have done this the less reluctantly because most, if not all of the evidence, was of doubtful relevancy. It is immaterial, so far as the jurisdiction is concerned, whether the title is disputed, or the plaintiff is in possession or not : Galbraith v. Bowen, 5 Dist. Rep. 352. The plaintiff asks, in the event of the court's reversing its former decision " as to the meaning of the will," that he be permitted " to produce evidence which will strengthen his position in that respect." We cannot hold the bill for such a purpose. The meaning of the will must be gathered from the

will itself.    No extrinsic evidence that the plaintiff could pro-
duce would be of the slightest service.

April 4, 1898, bill dismissed at the costs of the plaintiff.

*Error assigned* was the decree of the court.

*John Houston Merrill,* with him *J. R. Serfass* and *De Forrest
Ballou,* for appellant.——The controlling feature of the testator's
intention was a purpose to exclude every husband of his daughter
from all interest in this property.    Since the law gives a hus-
band curtesy in any estate of inheritance in the wife, this pur-
pose could be accomplished only by limiting the daughter's in-
terest to a life estate.    Hence by the exclusion of the husband
the line of descent was narrowed, the remainder-men took as
purchasers and not by limitation, and the application of the rule
in Shelley's case was prevented : Watt v. Watt, 3 Vesey, Jr.
244 ; Garrick v. Lord Camden, 14 Vesey, Jr. 372 ; Milne v.
Gilbart, 2 DeG. M. & G. 715 ; In re Norman's Trust, 3 DeG.
M. & G. 965 ; Ivins's App., 106 Pa. 176.

The fact that, by using language adequate to exclude exist-
ing and future husbands, the testator incidentally created a
separate use which, under some circumstances, might become
executed, or the accident of the death of the husband in his
wife's lifetime, could not prove that the testator intended to
give more than a life estate.    It is well settled that the inten-
tion will be judged from the conditions that existed at the date
of the will : Kuntzleman's Est., 136 Pa. 142.

There is not a word in the will which limits the separate
use for the daughter to the duration of the coverture with her
existing husband.    Upon his death, either the use could not be-
come executed in her at all, or, if so executed, her estate was
converted merely from an equitable life estate into a legal life
estate.    Any other interpretation of the will would defeat the
testator's intention to exclude the existing and possible future
husbands.

*Orrin Serfass* and *W. S. & M. Kirkpatrick,* for appellees, were
not heard, but in their printed brief said : The rule in Shelley's
case is clearly applicable to this devise, and by its operation
Maria M. Serfass took title in fee simple : Shelley's Case, 1 Rep.

104; Fearne on Cont. Rem. 188; Hileman v. Bouslaugh, 13 Pa. 344; Kleppner v. Laverty, 70 Pa. 70; Guthrie's App., 37 Pa. 9; Grimes v. Shirk, 169 Pa. 82; Physick's App., 50 Pa. 135; Potts v. Kline, 174 Pa. 513; Quillman v. Custer, 57 Pa. 125; Conrow's App., 3 Pennypacker, 356; Criswell's App., 41 Pa. 288; Doebler's App., 64 Pa. 9; Yarnall's App., 70 Pa. 340; Ralston v. Waln, 44 Pa. 279; Steiner v. Kolb, 57 Pa. 123; Cockins & Harper's App., 111 Pa. 26; Carson v. Fuhs, 131 Pa. 256; Sheeley v. Neidhammer, 182 Pa. 163; Greenwood v. Holbrook, 111 N. Y. 465; Halsey v. Paterson, 37 N. J. Eq. 448; Snyder's Est., 180 Pa. 70; Dodson v. Ball, 60 Pa. 492; Nice's App., 50 Pa. 143.

PER CURIAM, March 27, 1899:
The decree in this case is affirmed on the opinion of the learned court below.